## THE STEAM DREDGE A.

(Circuit Court of Appeals, Fourth Circuit. March 3, 1913.)

No. 1,139.

MARITIME LIENS (§ 37*)—LIENS FOR REPAIRS AND SUPPLIES—PRIORITIES.

The general rule is that maritime liens for repairs and supplies made or furnished during the same season and within a period of reasonable time will be placed on the same basis as to rank and priority, in the absence of special reasons existing for preferring one over the others.

·[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 58–70; Dec. Dig. § 37.*]

Appeal from the District Court of the United States for the Eastern District of North Carolina, at New Bern; Henry G. Connor, Judge.

Suit in admiralty by Howard S. Roberts, the York Foundry & Machine Company, J. K. Petty & Co. and the Earle Gear & Machine Company against the Steam Dredge A, Edmund H. Mitchell, trading as Mitchell & Co., claimant, and others. From the decree, certain of the libelants appeal. Reversed.

Harry McMullan, of Washington, N. C. (Small, MacLean & McMullan, of Washington, N. C., and George C. Muhly, Wickoff & Lanning, Willard M. Harris, H. Alan Dawson, and Biddle, Paul & Jayne, all of Philadelphia, Pa., on the briefs), for appellants.

J. F. Duncan and C. R. Wheatley, both of Beaufort, N. C., and H. H. Little, of Norfolk, Va. (Hughes, Little & Seawell, of Norfolk, Va., and Guion & Guion, of New Bern, N. C., on the briefs), for appellees.

Before GOFF, Circuit Judge, and BOYD and SMITH, District Judges.

SMITH, District Judge. On the 28th of August, 1911, a libel in rem was filed by the claimant of a lien for repairs, supplies, and other necessaries against the steam dredge A in the District Court of the United States for the Eastern District of North Carolina. This was followed by a number of libels and intervening libels filed in the same court against the same dredge by claimants of similar liens. No answer raising issues appears by the record to have been filed to any of these libels. A so-called "claim" appears to have been filed for the owner, Edmund H. Mitchell; but this claim simply alleged his ownership, and was not accompanied or followed by any further pleading traversing any allegation of any of the libels. On the 24th of October, 1911, a consent decree was entered. The decree so entered recites that the cause came on to be regularly heard upon the pleadings and proofs of the respective parties, and that after due deliberation had in the premises, the court found that all of the material allegations of the libels were true. From the record it does not appear that any proofs were offered beyond the libels themselves, and the decree was, in effect, a consent decree. This decree adjudged that the several libelants were each entitled to recover the amounts alleged in their respective libels. It made no distinction as to priority among them, but con-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

demned the dredge to the payment of the sums so decreed to the respective libelants in full, if sufficient there be; otherwise, pro rata in accordance with the sums and amounts of equal dignity therein adjudged to be due and payable.

The decree further directed that the dredge be sold by the marshal and the proceeds be paid into the court to await its further order as to distribution. The dredge was sold under this decree for a sum much less than the aggregate of the liens thereon as decreed. The case then again came on to be heard upon the question of the distribution of the proceeds. No further proofs appear to have been taken, and, so far as the record discloses, the matter was heard upon the averments and statements in the libels, and a decree was rendered on the 15th of April, 1912, whereby the liens were directed to be paid in four separate classes or ranks, viz.: To certain liens for repairs and supplies furnished in the port of Beaufort, N. C., was decreed priority in payment. Next were placed the liens for repairs and supplies furnished in the port of Philadelphia, Pa., and next were placed, following as third and fourth in rank and priority, certain other claims. The decree only recites the claims and decrees their respective rank and priority. It contains no finding of facts and conclusions of law as required by the act of the 16th of February, 1875 (18 Stat. 315, c. 77 [U. S. Comp. St. 1901, p. 525]), and does not state the ground upon which this distinction in rank between claims of the same character is awarded. An appeal from this decree to this court was taken by Howard S. Roberts, Earle Gear & Machine Company, York Foundry & Machine Company, and J. K. Petty & Co., who were by the decree placed in the second rank or class as the holders of claims for repairs and supplies furnished the dredge in the port of Philadelphia, Pa.

The assignments of error on behalf of the appellants claim that the judge below should have decreed that the claims held by the appellants were paramount in lien to the claims which by the decree were given the first rank; but upon the argument before this court the counsel for the appellants admitted that this claim for priority could not be sustained, but insisted that the claims held by the libelants were entitled to rank equally with those by the decree below given priority over them. There is no testimony in the record. There are no facts found in the decree of the court below, and apparently the only way of ascertaining what the facts of the case are is by inspection of the libels filed, whose statements were by the consent decree of October 24, 1911, found to be true. From these libels it appears that all the claims which by the decree below were given a first lien, and also all the claims of the appellants, were for repairs and supplies furnished. All of these claims appear to have accrued subsequent to the act of Congress of the 23d of June, 1910, and there is no question raised as to the priority of maritime liens for supplies and repairs in a foreign port over domestic liens for those in a home port.

The decree below gives to the repairs and supplies furnished in the port of Beaufort, N. C., a superiority in lien over the repairs and supplies furnished in the port of Philadelphia. No reason is assigned for this conclusion. From the libels and the statements of claim thereto

attached the repairs and supplies in the case of those furnished in Philadelphia, as well as those furnished in Beaufort, were furnished between February and August, 1911, all in the same year. Those furnished in Philadelphia preceded as a rule in point of time those furnished in Beaufort, presumably (although the record does not disclose the fact) because the dredge was in the port of Philadelphia, and from thence proceeded to the port of Beaufort. In some instances the same party who had furnished supplies and repairs in Philadelphia continued to furnish them in Beaufort.

The general rule as to maritime liens of this class is that, in the absence of special reasons existing for preferring one over the others, they will be placed upon the same basis as to rank and priority, where the supplies and repairs have been furnished and performed for the same voyage, or purpose, or substantially during the same period, or, as it may be otherwise stated, as a rule maritime liens for supplies and repairs furnished and performed in the same season and within a period of reasonable time are placed upon the same footing. Where they are separated by distinct voyages, or by an appreciable length of time, it has been held that those furnished and performed last are entitled to priority of payment, and the courts of maritime jurisdiction have also held generally that under special circumstances attending a claim of this character, such as supplies or repairs furnished or performed under circumstances that saved the vessel from threatened loss or destruction, such a claim, although last in order of time, may yet be decreed priority in payment.

So far as the record in this case discloses, there exist no such special circumstances in favor of the claims that accrued at Beaufort, N. C., over those that accrued at Philadelphia. In the absence of any such special circumstances, the court below erred in decreeing priority of payment to the claims enumerated in the first list set out in the decree as for repairs and supplies furnished in the port of Beaufort over the claims held by the appellants, and the decree below is accordingly reversed, and the case remanded to that court for a decree in accordance with the conclusions of this opinion.

Reversed.