### THE STEAM DREDGE A.

(Circuit Court of Appeals, Fourth Circuit. December 21, 1915.)

#### No. 1350.

ADMIRALTY ☞119—APPEAL—REVERSAL AND DIRECTION OF DECREE—AUTHORITY OF LOWER COURT.

On distribution of the proceeds of a vessel sold in proceedings in admiralty for the enforcement of liens, the court entered a consent decree finding "that all the material allegations of the libels are true," dividing the lien claimants into classes, and awarding those in the first class priority over those in the second. Certain of the latter appealed, and the decree was reversed, on the ground that no reason appeared from the record for the preference given, and the cause was remanded "for a decree in accordance with the conclusions of this opinion." *Held*, that all that was necessary to comply with such decision was the entry of another decree placing the appellants on an equality with the claimants in the first class and allowing them to share pro rata in the distribution of the fund, that the consent finding that the allegations of the libels were true *concluded* all questions of fact, and the decree was a final decree, leaving nothing further upon which to exercise judicial authority, and that the lower court

was without authority to retry the question of priority on evidence taken before a special master.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 776–790; Dec. Dig. ☞119.]

Appeal from the District Court of the United States for the Eastern District of North Carolina, at New Bern; Henry G. Connor, Judge.

Suit in admiralty by Howard S. Roberts and others against the steam dredge A (Edmund H. Mitchell, trading as Mitchell & Co., claimant) and others. From the decree, certain of the libelants appeal. Reversed.

For prior opinion, see 204 Fed. 262, 122 C. C. A. 527.

Harry McMullan, of Washington, N. C., for appellants.

Julius F. Duncan, of Beaufort, N. C., and H. H. Little, of Norfolk, Va. (Guion & Guion, of New Bern, N. C., and C. R. Wheatley, of Beaufort, N. C., on the brief), for appellees.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

KNAPP, Circuit Judge. In this proceeding in admiralty the vessel libeled, known as steam dredge A, was ordered sold, and dispute has arisen as to the distribution of the proceeds. The history of the litigation and the questions heretofore decided will appear from the opinion of this court on a former appeal. 204 Fed. 262, 122 C. C. A. 527. The trial court had divided the various claimants into six classes, and awarded priority of payment to those placed in the first class, who are described as the New Bern-Beaufort claimants, and whose liens were for repairs and supplies furnished to the dredge in the port of Beaufort. In the second class were placed the creditors whose liens were for repairs and supplies furnished in the port of Philadelphia. As the fund available for distribution was sufficient to pay only a small portion of the Philadelphia claims, after paying the New Bern-Beaufort creditors in full, certain of the Philadelphia claimants, four in number, the same who are now appellants, took an appeal to this court, which held, on the record then presented, that no reason appeared for giving preference to claims for repairs and supplies furnished in the port of Beaufort over the claims of appellants for repairs and supplies furnished in the port of Philadelphia. Accordingly the decree of the court below was reversed, "and the case remanded to that court for a decree in accordance with the conclusions of this opinion."

Apparently, all that was necessary to comply with this decision was to enter another decree, which would in effect put the four appellants in the first class and divide the fund pro rata between them and those originally included in that class, if the amount were insufficient to pay them all in full. It seems plain to us that this would have been a decree "in accordance with the conclusions of this opinion," and that no other or further action was required. Manifestly the other Philadelphia creditors would be excluded, because they had not appealed, and were therefore left in the position assigned to all Philadelphia creditors by the decree that was reversed. In other words, the conclu-

sions of this court were that the appellants had equal standing with the New Bern-Beaufort claimants and were entitled to a decree which recognized that equality. To our minds this was the plain contemplation of the opinion, and all that remained to be done was to enter a new decree in conformity therewith.

But the trial court, misconceiving the import of the decision, or misled by certain statements in the opinion, and against the objection of appellants, ordered a reference of the entire case to a special master to ascertain the facts respecting "the amount, nature, and extent" of all the libels which had been filed in the proceeding. Under this order there was virtually a trial de novo, in which voluminous testimony was taken and an elaborate report made by the special master. Upon this report the court below again held that the New Bern-Beaufort claimants were entitled to priority, mainly upon the ground, as we gather from the opinion, that the facts disclosed in the testimony taken by the special master showed that the Philadelphia claims were not maritime liens, because the materials and supplies therein mentioned were furnished for the construction or reconstruction of the dredge, and were therefore not the subject of admiralty jurisdiction.

It is unnecessary to decide whether the learned judge was correct in thus applying the law to the facts developed before the special master, since we are of opinion that the case was improperly referred for the taking of testimony, and should have been disposed of on the record already made, by entering a new decree in accordance with the conclusions of this court. Indeed, it may be conceded for present purposes that if the facts respecting the Philadelphia claims had been shown originally, or were now open to inquiry, there were "special circumstances and equities" which justified giving the New Bern-Beaufort creditors priority over the Philadelphia creditors, even if the latter brought their claims within the statute relating to maritime liens. But the difficulty is that the opposing creditors foreclosed investigation of the facts now relied upon by failing to controvert in any way the matters set forth in the libels of the Philadelphia claimants, and by their formal consent in open court to a decree in which "the court finds that all of the material allegations of the libels are true, and that the libelants hereinafter named are entitled to recover herein the sums respectively hereinafter set out." It seems clear to us that this finding established the facts alleged in the various libels, including those filed by the Philadelphia claimants, as fully and conclusively as if proven in every detail by undisputed evidence. And when examination is made of the allegations in the libels of appellants we regard it as not open to doubt that they set forth facts which constitute maritime liens, within the meaning of the federal statute, and that nothing else can be made of them.

Taking these allegations at their face value, as they were formally admitted by the other parties in interest and expressly found to be true in the court's decree, we discover nothing of record, or in the opinion of this court on the former appeal, which required or permitted further inquiry concerning the facts which had thus been solemnly adjudicated. It was too late thereafter for the appellees to

dispute their accuracy, and the trial court was without authority in our judgment to make them the subject of further investigation. They were adequate in every respect for a final disposition of the case, and there was no occasion for taking testimony or referring the matter to a special master in order to give full and complete effect to the decision of this court. It was only necessary, as above stated, to enter another decree upon the facts already of record, which would include these appellants among the claimants entitled to preference over other creditors. Ex parte Dubuque & Pacific Railroad, 68 U. S. (1 Wall.) 69, 17 L. Ed. 514; In re Potts, 166 U. S. 263, 17 Sup. Ct. 520, 41 L. Ed. 994.

It is argued that the decree reversed by this court was merely interlocutory, and not a final decree, and therefore the trial court was free to modify, or even disregard, the findings based upon the admissions and consent of the parties, and could make further inquiry as to the truth of the facts alleged in the libels in question. But we fail to see upon what theory this contention can be supported. The decree appealed from, not only purported to be a final decree, and was so entitled, but it was in fact and effect a full and complete determination of the controversy. If no appeal had been taken, the litigation would have been ended, for nothing remained upon which to exercise judicial authority. Indeed, if it had not been a final decree, this court would have had no judisdiction to review it. Mordecai v. Lindsay, 60 U. S. (19 How.) 199, 15 L. Ed. 624. Moreover, the appellees sought to sustain it as a final decree, and such beyond doubt is its actual character. Farmers' Loan & Trust Co., Petitioner, 129 U. S. 206, 9 Sup. Ct. 265, 32 L. Ed. 656; Central Trust Co. v. Grant Locomotive Works, 135 U. S. 207, 10 Sup. Ct. 736, 34 L. Ed. 97.

The further contention is made that this decree was reversed because the record failed to disclose the facts upon which it was based, and this is claimed to be supported by the following quotation from the opinion:

"The decree  *  *  *  contains no finding of facts and conclusions of law, as required by Act Feb. 16, 1875, c. 77, 18 Stat. 315 (Comp. St. 1913, §§ 1585, 1586), and does not state the ground upon which this distinction in rank between claims of the same character is awarded."

Whatever inference might be drawn from this statement taken by itself, it seems plainly erroneous, when the whole opinion is examined, to conclude that this court reversed the decree for the reason that it contained no specific finding of the facts from which the conclusions were drawn. It is true that attention is called to the fact that the form of the decree was not in compliance with the statute in question. But clearly this was not the ground of decision; it merely supported the conclusion that nothing appeared to justify "this distinction in rank between claims of the same character." If the decree had been reversed because there was no finding of facts upon which a final decree could be entered, the case would have been sent back with instructions to ascertain the facts and thus disclose the ground for awarding priority to the New Bern-Beaufort claimants. This would have been equivalent to ordering a new trial, or at least permitting the

court to make further investigation of the facts. But the appellants did not ask for a new trial, and this court did not direct a new trial. All the proceedings in the case, including the various orders and decrees of the trial court, were set forth in the record on appeal to this court. The appellants contended that upon the facts thus shown they were entitled to be classed with the preferred creditors, and that it was therefore error of law to give priority to the New Bern-Beaufort claimants. That contention was sustained by this court, and accordingly the case was remanded, not for a new trial, but "for a decree in accordance with the conclusions of this opinion." It is only repeating to say that, as we see the matter, the trial court should have simply entered another decree, which included the appellants among those whose claims had been held entitled to priority of payment.

After the reference to a special master, as above recited, the appellants applied to this court for a mandamus requiring the District Judge to enter such a decree as they claimed had been directed; and the denial of that application is urged as an adjudication that the reference was properly ordered. But such a deduction from the negative action of this court would be quite unwarranted. The only reasonable inference from the refusal of the writ is that this court in the exercise of its discretion declined to interfere at that stage of the case; the merits of the question were not considered.

A motion to dismiss the appeal is made upon the ground that it was allowed on October 28, 1914, while the petition for appeal and assignment of errors were not filed in the clerk's office until November 18, 1914. Examination of the record discloses that the petition for appeal and the assignment of errors were presented to the District Judge at the time he allowed the appeal, but through some inadvertence the same were not filed in the clerk's office until the date named. Under these circumstances we are of opinion that the requirements of the rule have been fully complied with. The other grounds set forth in the motion to dismiss are without merit, and the motion will therefore be denied.

For the reasons indicated, the decree must be reversed, and the case remanded for a decree which will include appellants among those whose claims to priority were established by the original decree.

Reversed.