## UNITED STATES v. PORT WASHINGTON BREWING CO. et al.

### Petition of LA BAHN.

(District Court, E. D. Wisconsin. August 12, 1921.)

1. **Criminal law ⬤═997—Writ of error coram nobis abolished in federal procedure.**

   The writ of error coram nobis has been abolished in federal procedure as a specific remedy, and motions in the case substituted.

2. **Criminal law ⬤═1192—After affirmance by appellate court trial court has power only to execute mandate.**

   After a judgment entered on a plea of guilty has been affirmed by the appellate court and mandate issued for its enforcement, the trial court is without power to permit a withdrawal of the plea and a trial of the defendant.

Criminal prosecution by the United States against the Port Washington Brewing Company and others. On petition of defendant Herbert C. La Bahn for writ of error coram nobis. Denied.

H. A. Sawyer, U. S. Atty., of Milwaukee, Wis.

Henry A. Berger and Arthur C. Bachrach, both of Chicago, Ill., for defendant.

GEIGER, District Judge. An indictment was returned on May 2, 1921, charging the defendants, in 47 counts, with a violation of the National Prohibition Act, in that they manufactured and sold an intoxicating beer; and upon a consideration of the matter now before the court a chronology of the steps in the case as shown by the record may be preliminarily noted:

Pursuant to process, each of the four defendants, with counsel, appeared before the court on the 10th day of May, 1921, and upon arraignment pleaded not guilty; and the record contains the usual recitals respecting plea and joiner of issue. Immediately upon conclusion of arraignment, the court directed that the case be tried upon the ensuing 23d day of May, 1921, which date was accepted by both the government and the defendants as the date for trial; that is to say, no objection thereto was made.

The case retained this status until the 18th day of May, when the government and the defendants—undoubtedly, as will appear, by consent of respective counsel and parties—appeared in court; and the proceedings then taken are of record. At this point reference may be made to the parties. The defendant Port Washington Brewing Company is a corporation engaged in the business indicated by its name, and the defendants Ludwig La Bahn and his two sons, Herbert La Bahn and Charles La Bahn, were and are the stockholders, and bore relation respectively to the management and direction of the business substantially as follows: The father, Ludwig La Bahn, is of advanced age, 82 years, has participated little in the affairs of the business,

and for some time prior to the time laid in the indictment had lived principally in Chicago. The defendant Herbert C. La Bahn was in active management of the corporate business. He and his brother and codefendant, Charles La Bahn, had had serious differences, consequent upon which Charles, so the parties, including the government, agreed, had had little, practically no participation whatever, in the conduct of the business or in the commission of the acts charged in the indictment. In this situation, the parties appearing in court, and after exhaustive statement by the government and defendants' counsel of the facts relevant to the case, the proceedings on the 18th day of May, 1921, are exhibited upon the record in this court as follows:

"This day came the district attorney, Mr. H. A. Sawyer, and the defendants with their counsel. And the district attorney, by leave of court, entered a nolle prosequi of this indictment as to the defendant Ludwig La Bahn. And the defendant H. C. La Bahn, by leave of court, withdraws his plea of not guilty by him before pleaded and pleads guilty and submits in mercy. And the defendant Port Washington Brewing Company, by leave of court, withdraws its plea of not guilty by it before pleaded, and pleads guilty. And the defendant Charles La Bahn, by leave of court, withdraws his plea of not guilty by him before pleaded and tenders a plea of nolo contendere, which plea is accepted by the court."

Thereupon the court sentenced the defendant Herbert La Bahn upon the first, second, third, fourth, seventeenth, and eighteenth counts to six months in the House of Correction, and upon the forty-seventh count to ten months in the House of Correction, the sentences to run concurrently, and upon each of the remaining 40 counts a fine of $50, amounting in all to $2,000; the corporate defendant was fined in the aggregate $18,800; and the defendant Charles La Bahn upon his plea of nolo contendere $50 upon each count, in the aggregate $2,350.

Immediately upon pronouncement of judgment, the defendant Herbert C. La Bahn, by his counsel, appealed to the court for a stay of execution of sentence for ten days, which was granted, the defendant entering into a recognizance. Upon expiration of the stay, May 28th, such defendant made application to the court for allowance of a writ of error to the Circuit Court of Appeals for this circuit, which, having been denied, was presented to one of the judges of the Court of Appeals and allowed, with supersedeas. Thereafter, the United States attorney having moved for a vacation of supersedeas, such proceedings were had in the Court of Appeals that the writ of error was heard on its merits on the 13th day of June, 1921, and the judgment of conviction affirmed on that day, with direction that the mandate of said court "issue forthwith," concluding in the ordinary form:

"You therefore are hereby commanded that such further proceedings be had in said cause as according to right and justice and the laws of the United States ought to be had, the said writ of error notwithstanding."

Upon the reception of the mandate in this court, the defendant Herbert La Bahn, upon the same or following day, presented to this court a petition for a writ of error coram nobis, which this court refused to

receive or allow to be filed, whereupon, within the ensuing few days, application for a writ of error was made to the Circuit Court of Appeals, which application, so this court was advised by counsel interested in the matter, was withdrawn pending its presentation in open court.

Thereafter, and on or about the 22d day of June, 1921, the defendant Herbert La Bahn renewed his application in this court for leave to file a petition for a writ of error coram nobis, which petition, being filed, was heard by the court, the defendant desiring to introduce testimony in its support; 'and the testimony of the defendant and three attorneys who participated in the matter was given on behalf of the respective parties and is now before the court for consideration, whether the application be considered in a technical aspect for the issuance of a peculiar writ or for other relief as upon motion.

At the time, May 18th, when the court disposed of this case, three attorneys, Messrs. Fawcett, Kluwin, and Bowler, were present and appeared on behalf of the defendants. The first of these appeared on the original arraignment as counsel for all of the defendants. Mr. Kluwin had been retained on or shortly before May 18th. Mr. Bowler seems to have appeared in the case and in court for the first time on May 18th, and undoubtedly in the special interest of the defendant Charles La Bahn. He, so the testimony shows, from the start insisted that whatever the facts may show respecting knowledge on the part of Charles La Bahn of the culpable acts of the corporation and his brother, Herbert La Bahn, it would not and could not be shown that he was a culpable participant in any of the acts laid in the indictment. These matters are now referred to in view of the grounds asserted in the petition of the defendant Herbert La Bahn for a vacation of the judgment and recalling his plea of guilty. The petition recites:

(1) The retention of Kluwin and Fawcett on behalf of the petitioner, Kluwin having entered the case May 18th, and "represented to your petitioner that he was well acquainted with and personally friendly and intimate with H. A. Sawyer, United States attorney, * * * and that he would and could arrange to have your petitioner enter a plea of guilty in said cause, and that a fine would be imposed upon the entry of such plea."

(2) That the trial of this case had been set for May 23d, and that on May 18th petitioner did not know that there was to be or would be a hearing, or that any proceedings would take place in connection with the indictment against him; that with his attorneys he came to the office of the United States attorney for an interview with the latter; "that immediately following the interview between H. A. Sawyer, the United States attorney, and the said Fawcett and Kluwin your petitioner was told by the said Kluwin to come along and follow him, and your petitioner then found himself in the courtroom of this honorable court."

(3) That your petitioner was seated "in the rear of the courtroom and did not know and had not been informed that any proceedings were to be had with respect to the indictment pending against him; that at said time and place he heard the said John Kluwin inform the court that your petitioner, the defendant in said indictment, desired to enter a plea of guilty to the indictment."

(4) That Kluwin was "wholly unauthorized and had no authority to inform the court that your petitioner desired to enter a plea of guilty, and * * *

that the announcement of the said John Kluwin that your petitioner desired to enter a plea of guilty came with surprise and was wholly unexpected."

(5) That petitioner had "specially and directly and positively instructed and informed his counsel, both Kluwin and Fawcett, that under no circumstances would he consent to the entry of a plea of guilty if there was a possibility of the imposition of imprisonment of any kind, and your petitioner stated emphatically and expressly to both Kluwin and Fawcett that, if such possibility of imprisonment upon the entry of a plea of guilty existed, your petitioner desired to plead and would plead not guilty."

(6) That petitioner's first intimation that Kluwin would enter or intended to enter a plea of guilty was when the words were expressed by Kluwin in open court on the day mentioned, and "that immediately following the imposition by the court of the imprisonment and fine against this petitioner he remonstrated and criticized and condemned the action of the said John Kluwin in the entry of said plea of guilty, and then and there immediately informed the said Kluwin that the entry of said plea of guilty was made without any right or authority and in express violation of your petitioner's instructions, and your petitioner then and there requested the said John Kluwin to so inform the court, which the said John Kluwin refused to do, stating that your petitioner need not be alarmed or be concerned about the entry of the plea of guilty; that he, the said John Kluwin, would see that everything came out all right."

(7) "That at such time and place, viz. immediately following the entry of the plea of guilty, and immediately following his protest to the said John Kluwin that he was wholly unaware and ignorant of his right to then and there protest to the court, and your petitioner further avers that he remained wholly unaware and ignorant of his right to protest or of the legal effect of the entry of said plea by the said John Kluwin and of his right to move in said District Court to set aside the entry of said plea of guilty or to correct the said plea of guilty, and that he remained in ignorance of each and of all of these matters on said 18th day of May, 1921, and during all the time from said 18th day of May to the 14th day of June, 1921, at which time he was informed of his legal rights by counsel other than the said Fawcett and Kluwin."

The determination of the facts must rest upon the testimony taken upon this hearing, and upon such matters as are within the cognizance of the court as having taken place upon the hearing of the case; and I conceive that there are but two questions:

First. Is the plea of guilty which is of record in this case the voluntary plea of the defendant?

Second. Can this court, in view of the affirmance of the judgment of conviction by the Court of Appeals, and the remission of the case under a mandate directing enforcement of such judgment, now entertain an application to vacate, or reopen the judgment, or grant a trial?

The first of these questions is one of fact, which, if a negative answer be given to the second, need not be decided. But I have concluded, having taken the testimony, and also because of the extraordinary character of the defendant's charge, to consider the matter of fact, and to express my views thereon.

There is no doubt that between May 10th, when the case was set for trial, and May 18th, the defendant, through his counsel, had a number of conferences with the United States attorney, to the end of determining whether the case, as against any or all of the defendants, should be tried upon the merits as they became involved through the initial pleas of not guilty interposed by all of the defendants, or whether the defendants, or any of them, would withdraw or change the

then standing plea. It is unquestioned that the district attorney, realizing the necessity of preparing for trial and issuing subpœnas for the large number of witnesses to be called on behalf of the government, became very insistent that defendant's counsel should apprise him not later than May 18th of any conclusion reached with respect to the defendants in the matter of changing their pleas. It appears also that the defendants arranged to meet in Milwaukee with their counsel, in view of this insistence on the part of the United States attorney, and that Attorney Kluwin was called into the case, doubtless because of the urgency of making a reply to the district attorney's demand to be advised as noted.

It will serve no purpose merely to narrate the testimony given by the several witnesses upon this hearing, because the effect of such testimony can be best seen by its consideration in the light of matters uncontradicted. In short, as will be seen, the defendant, notwithstanding the allegations of his petition, has, at most, raised an issue of veracity between himself and every other witness upon the hearing which issue must be resolved, unhesitatingly, against him. Apparently, assuming that the petition filed is prima facie sufficient in its allegations of fact, for some purpose or other, the defendant and his counsel appeared to endeavor to substantiate it: First, by assertion of the defendant that he directed his counsel to plead not guilty in certain contingencies; secondly, that he never "authorized" his counsel to plead him guilty; or, third, that in court he never expressly said, "I consent to this plea of guilty."

Now, it is uncontroverted that the defendants and their counsel held extended conferences in Milwaukee on the 18th of May, solely for the purpose of considering the state of the case and what answer should be given to the district attorney in response to his demand that he be notified not later than on that day whether trial would be had upon the then standing pleas of not guilty. Nothing else was discussed. The defendant supports this by the strongest affirmative testimony. An original suggestion that defendant did not know of the possibility of a prison sentence upon conviction under the law is likewise eliminated from the case. There is an entire concurrence in the testimony upon the proposition that not only was the law well understood, but that in the conferences it was assumed that upon a conviction, either upon trial or upon a plea of guilty, a prison sentence was not only possible, but in the highest degree probable. It is unquestioned that in the conferences there was no skepticism on the part of anybody upon this phase of the case. It is equally true that much time was spent in discussing the means, if any could be suggested, for ascertaining in advance the probable action of the court. It is without controversy that, after the conference between defendants and their counsel, a further conference was held with the United States attorney; that the latter agreed to submit to the court an application for leave to enter a nolle prosequi against the defendant Ludwig La Bahn, and indicated that he would offer little or no opposition to an application to plead nolo contendere on behalf of the defendant Charles La.

Bahn; that he was unalterably opposed to a consideration of the case against the defendant Herbert La Bahn, except as one exhibiting plain guilt, and that, unless a plea of guilty were entered on his behalf, the case must go to trial. It is likewise unquestioned that upon terminating the conference in the district attorney's office the entire party came at once to the courtroom, where the pleas now of record were entered, accepted, and acted upon, after formal application for the withdrawal of each of the previous recorded pleas of not guilty; that the plea of guilty on behalf of the defendant Herbert La Bahn was entered formally, categorically, within the presence and plain hearing, the perfect understanding and comprehension, of the defendant and every one else in the courtroom; that exhaustive statements of fact were made by the district attorney and the respective counsel for the defendants, all for the purpose of aiding or assisting the court, or the defendants, in the matter of the acceptance of the changed pleas and the penalties to be imposed thereon. Not a suggestion nor a syllable of dissent was or at any time had been voiced by the defendant respecting the truth of any of the foregoing.

The witnesses Kluwin and Bowler have given in great detail what transpired at the various conferences. The witness Fawcett, while declining, apparently, to accede to some of the matters of detail, unhesitatingly concurred in the ultimate inference to be drawn from the testimony in this case, namely, that what happened in court was precisely what he, as a lawyer for the defendant, contemplated should happen, in the light of the conferences which preceded the action of the court; as he puts it, any lawyer would certainly get that impression.

No one has suggested that as to the defendant Herbert La Bahn the conferences proceeded upon any other hypothesis than that of his and the corporation's undeniable guilt. True, he endeavors to say that he declined to plead guilty if there was to be a prison sentence, but that the conferences proceeded with a discussion of the matters of fact pertaining to the case upon the hypothesis either of innocence or a meritorious defense is not suggested anywhere in the case. The relation of the individual defendants to each other, their employment initially of the same counsel upon the original pleas of not guilty, the entrance of Mr. Bowler and Mr. Kluwin into the case after issue had been joined by pleas of not guilty, and the conferences held as noted, are circumstances throwing light upon the situation and afford most persuasive support to the testimony other than that of the defendant.

Now, it would be contrary to probabilities that, in the situation thus developing, either the parties or their counsel should be able to disclose conferences wherein the relations of the individual defendants as members of a family interested in a corporation should be discussed or conclusions should be reached, authority granted or received, according to set formulæ or precise terminology such as is suggested by questions put to the defendant when he was on the stand. It would be anomalous—it never happens—that in such situations a party will address his counsel in formal words endowing him with the requisite authority to take a step in litigation which has been the subject-matter

of exhaustive, though informal, conference. The question considered by the parties whether the pleas of not guilty should stand was answered in those conferences understandingly to the comprehension and apprehension of both parties and counsel, in the same manner and by the use of ordinary language as it usually is. Therefore, when we come to a consideration particularly of the testimony of Messrs. Kluwin and Bowler, we find that what they say is in entire accord, not only with much that the defendant himself admits, but with rather conclusively probable expectation, in view of the intention of the conferences, in the accession by parties and counsel in open court to the happening of the things which there happened, and the affirmance by the defendant himself of those facts after the termination of the case and for three weeks thereafter.

So, on the one hand, there is the clear, unequivocal testimony dealing with what happened in the various conferences and in open court, leaving no doubt in the mind of any one who will read the testimony or who heard the statements, or who had cognizance of the proceedings, that the things that were done were those to which the parties had agreed. The testimony given by Kluwin and Bowler stands upon the record without contradiction, except as hereinafter noted, and, when given, was, as to neither of them, sought to be tested out by cross-examination. Against this, as tendering the only possible issue, is the statement of the defendant that he had instructed Kluwin and Fawcett that he would not plead guilty. Both deny it. One would think from his testimony that, while he was present during the whole day, apparently in as close conference with his own counsel and as close to a conference at the district attorney's office as he could get, he yet heard but little of what was transpiring; that, although the purpose of going to the district attorney's office, of entering the court, was known to every one, he did not include himself and his part of the case as comprehended within the purpose; and that, although his guilt and his assumption of the consequences were fully discussed in all the conferences, likewise the consequences of his acknowledgment of guilt and the course to be pursued for the purpose of getting a short respite from imprisonment, yet he, in passing from the district attorney's office to the courtroom, expressly instructed Kluwin to interpose a a plea of not guilty, when the case already stood on such a plea. In this he is alone, not even getting support from any one in respect of his assertion that after imposition of sentence he protested or was surprised. It would seem quite without controversy that immediately upon the imposition of a sentence, which, except possibly as to the length of imprisonment, was fully expected by every one, every energy was at once bent toward steps for executive clemency. A stay of execution applied for and granted was in fact availed of for the purpose of a trip to Washington. According to Fawcett's testimony, he and the defendant discussed the result in court much of the time and "leisurely." Apparently at no time was there an intimation to Fawcett of the story told by the defendant on the stand respecting any conversation between the defendant and Kluwin. In a petition to the Presi-

dent for clemency, the defendant apparently asserted the interposition of his plea of guilty upon the advice of counsel, not once suggesting that it was not the plea authorized or assented to.

Without going into further detail, there is nothing in the case to suggest that Kluwin and Bowler, upon any promptings whatsoever, either equivocated or fabricated a syllable of the narrative given by them respectively of what transpired prior to the imposition of the sentence on the defendant. The story that the defendant, in a clandestine sort of a way, should communicate what he says he communicated to Kluwin, when nearly an entire day had been spent in reviewing the case and reaching a conclusion that that which was done should be done, is utterly beyond belief, and I unhesitatingly reject it as one made up, when, nearly a month after sentence, a frivolous writ of error had spent itself as a means of delaying or frustrating execution of the judgment.

But, even if the defendant's story could be either accepted or debatably entertained, the answer to the second question above propounded must dispose of this entire proceeding. Certainly our system of trial and reviewing courts contemplates that at some stage in litigation finality in results be attained. Certainly it is not contemplated that appeals from the final judgments of trial courts may be taken, and, if affirmed by a reviewing authority, the former should still retain power to reopen and again try lawsuits. This does not mean that in no case when there has been a review and an affirmance can there be a remedy. But it does mean that under our system of courts action by a reviewing tribunal must operate either as a limitation upon, or a complete deprivation of, power in trial courts for reopening litigation. This is familiar law, and no better statement of the doctrine can be found anywhere than in Re Potts, 166 U. S. 266, 17 Sup. Ct. 520, 41 L. Ed. 994. Obviously that the defendant calls his proceeding a petition for a writ of error coram nobis makes no difference in this case. That writ has become obsolete, and matters formerly cognizable through it as a medium must now be made the subject-matter of ordinary motion. But its analogy at law to bills of review in chancery and the analogy of any motion at law to bills of review in chancery, when the time for exerting any other remedy has expired, are perfect.

Therefore let us consider the present status of this case so far as this court is concerned. The judgment pronounced upon the defendant was certainly final and immediately executable. It ended the case. But he sued out a writ of error, thereby transferring the case to the Circuit Court of Appeals, and likewise, for the time being, suspending the power of this court to execute the judgment. That writ of error undeniably asserted the rendition of judgment by this court upon the defendant's plea of guilty. That plea, so far as it constituted the basis of record for the action of this court, was asserted by the writ of error to be his plea in the case, and he sought review of the proceedings in this court, and challenged the judgment, notwithstanding his plea. Without question record so transmitted to the Court of Appeals formed the basis for its action, and, when the judgment was affirm-

ed, it was affirmed upon a plea asserted by the defendant to be his plea in the case, and the affirmance of the judgment necessarily read that plea into the judgment of the Court of Appeals. The mandate of the Court of Appeals is absolute. It contains no reservation to this court of any power to retry the case. It contains no direction other than the direction in law to enforce the judgment; and, there being no reservation nor direction expressed, none is implied. The judgment has been remitted to this court, and by remission upon affirmance there has been withdrawn from this court all power to re-examine any question of fact or law, even jurisdiction, comprehended within appellate review and essential to the affirmed judgment, all power except that of enforcement; and that is imperative. It would be anomalous if in this situation this court by motion or by a proceeding otherwise styled, or by process or by writ, at its mere discretion, could now simply upset the affirmed judgment. It would be anomalous if a litigant, either in chancery, at common law, or in criminal case, could take his adversary to the reviewing tribunal and treat the proceeding as justified for speculative purposes only, as amounting to nothing in case of an adverse ruling, confident at all times of his right through innumerable proceedings upon return to the District Court to prevent such enforcement as should come upon finality; in other words, to stave off real finality indefinitely.

[1, 2] A somewhat careful examination of the adjudicated cases discloses clearly the abolition of the writ of error coram nobis in federal procedure as a specific remedy; the substitution of motions in the case; the universality of application of the principle as inherent in our system of trial and appellate procedure that trial courts, through determination upon appeal, are deprived of power of reopening, re-examining, retrying, altering, or changing determinations which have been read into appellate judgments. Without citation from cases, it will suffice to call attention to the following as sustaining the view that in the present case, unless and until the appellate tribunal "releases," as some of the authorities speak of it, this court, from its single obligation to enforce the affirmed judgment, there is no power residing here except the single power of enforcing that judgment: U. S. v. Mayer, 235 U. S. 55, 35 Sup. Ct. 16, 59 L. Ed. 129; McClellan v. Carland, 217 U. S. 268, 30 Sup. Ct. 501, 54 L. Ed. 762; Ex parte Equitable Trust Co., 231 Fed. 571, 145 C. C. A. 457; Scott v. U. S., 165 Fed. 172, 91 C. C. A. 206; Ex Parte Fuller, 182 U. S. 563, 21 Sup. Ct. 871, 45 L. Ed. 1230; Angle v. U. S., 162 Fed. 264, 89 C. C. A. 244; Morris v. U. S., 185 Fed. 74, 107 C. C. A. 293; Steam Dredge A, 229 Fed. 682, 144 C. C. A. 92; Sundh Electric Co. v. Cutler-Hammer Co., 244 Fed. 170, 156 C. C. A. 591; Durant v. Storrow, 101 U. S. 556, 25 L. Ed. 961; National Brake & Electric Co. v. Christensen, 258 Fed. 886, 169 C. C. A. 600. See, also, Nat. Brake & Elec. Co. v. Christensen, decided January 3, 1921, 254 U. S. 425, 41 Sup. Ct. 154, 65 L. Ed. ——; Sibbald v. U. S., 12 Pet. 492, 9 L. Ed. 1167; Suhor v. Gooch, 248 Fed. 870, 160 C. C. A. 628; Bronson v. Schulten, 104 U. S. 413, 26 L. Ed. 797; Phillips v. Negley, 117 U.

S. 672, 6 Sup. Ct. 901, 29 L. Ed. 1013; Pickett v. Ledgerwood, 7 Pet. 144, 8 L. Ed. 638.

The question is not whether defendant, if the facts are as he asserts them to be, is wholly without a remedy. It is simply whether, in view of the affirmed judgment and the obligation resting upon this court pursuant to it, the power rests here to entertain at this time any remedy. It does not seem possible that, consistently with the principle above discussed, and which seems of universal application to proceedings upon every side of the federal courts, there coexists, in defiance of it, power in trial courts to entertain such an application as is here made without previous grant or reservation obtained from the appellate tribunal.

Either ground herein discussed compels the conclusion that the proceeding be dismissed; and an order may be entered accordingly.