ELECTRIC STORAGE BATTERY CO. v. GOULD STORAGE BATTERY CO.

(Circuit Court of Appeals, Second Circuit. March 10, 1913.)

No. 145.

PATENTS (§ 328*)—INFRINGEMENT—MACHINE FOR MAKING SECONDARY BATTERY GRIDS.

    The Madden patent, No. 570,224, for a machine for making secondary battery grids, cannot be so broadly construed as to cover the machine of patent No. 572,363, to the same patentee, which, though issued later, was applied for first, and the machine reduced to practical use before application for No. 570,224 was filed. As so limited, *held* not infringed by machines in substantial conformity to the combination of No. 572,363.

This cause comes here upon appeal from a decree of the District Court, Western District of New York, dismissing a bill in equity. The suit is for infringement of letters patent 570,224, issued October 27, 1896, for machine for making grids for secondary battery plates, to Albert F. Madden, assignor to complainant. The specification states that the mode of operation of the machine is such that portions of a lead blank held against edgewise expansion are gradually displaced by repeatedly imbedding devices (rotary punches or disks) into it, thereby increasing its density and squeezing up face-hardened ribs above the original surface of the plate. The claim relied on is:

"2. A machine for making secondary battery grids, comprising the combination of a blank holder, cutters on each side of the holder, means for recipro-

cating one of said parts in respect to the other, devices for rotating the cutters, and mechanism for feeding the sets of cutters towards each other substantially as described."

This patent was applied for January 11, 1896. On November 19, 1895, Madden had applied for a patent for a "battery grid and machine for producing same," in which a suitable blank was subjected to the spinning action of rollers provided with cutting disks. Upon this application, patent issued (No. 572,363) December 1, 1896, to Albert F. Madden, assignor to Van Winkle and Chamberlain. The assignment was filed with the application.

The opinion of the District Court will be found in 197 Fed. 745. Reference may also be had to a decision of this court in Gould Co. v. Electric Storage Co., 192 Fed. 28, 112 C. C. A. 416, where testimony as to the various assignments and the title to the two patents was considered.

A. B. Stoughton and Geo. S. Graham, both of Philadelphia, Pa., for appellant.

Kenyon & Kenyon, of New York City (W. H. Kenyon and R. Eyre, both of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). The fundamental question is: What construction shall be given to claim 2 of the patent in suit? Before that patent was applied for Madden had conceived the invention which is disclosed in patent 572,363. He had embodied it in a machine, reduced it to practice, prepared and executed an application for it, had sold, not only the machine, but all rights to be acquired to the invention embodied in that machine, and assigned the application therefor to Van Winkle and Chamberlain. This invention of 572,363 was, prior to November 19, 1895, known to and used by these persons, and apparently known to others. The assignment gave to the assignees the right to prosecute the application and obtain the patent. Madden could not, of course, reinvent the particular thing he had already invented and applied for; nor does he assert that he did so. The earlier invention he describes in his testimony as a "spinning machine"; the later invention as a machine for making the plates or grids by a process of rocking the dies or rolls, which is a different sort of a machine. Although not technically prior art, since patent for it was issued later, the invention of 572,363, which had already been reduced to practice publicly and had passed to others than the patentee, has an important bearing on the construction to be given to the claims of the patent granted on a later application. Sundh v. Interborough, 198 Fed. 94, 117 C. C. A. 280.

Claim 2 of patent 570,224, if construed literally, would be broad enough to cover a machine built in accordance with 572,363, although the instructions of the application for that patent had already been followed, with the result that a machine had been actually produced and successfully operated by the assignees of the applicant, before he made any application for 570,224. Such a result is avoided, however, by the

familiar rule of construing its broad terms by reference to the specifications.

Without going into details, this can readily be done by restricting claim 2 to machines which do not (like those of 572,363) operate by the spinning process, where high speed produces heat and a resulting plasticity in the metal which is spun up. Without now deciding exactly how this claim shall be construed, and what machines, other than the precise one described in 570,224, it will cover, it is sufficient to hold that it cannot cover the machine of patent 572,363, which was first applied for, and which—machine and application—were transferred to defendant's predecessors before Madden filed his second application.

The only remaining question in the case is to determine from a study of the machines of defendant now complained of (those in operation at Depew, N. Y.) whether they are in substantial conformity with the combination described in 572,363. The District Judge had the advantage of himself seeing these machines in operation, but the record very clearly describes just what they are and how they operate. The comparison of them with 572,363 is very tersely and persuasively expressed in the testimony of defendant's expert on pages 287 and 288. The only noticeable differences are that the cutting rolls are fed towards each other by pneumatic pressure, instead of a weighted lever, a manifest equivalent, and not at all the screw pressure feeding of patent 570,224. Also the rolls are applied and withdrawn when crossing a proposed strengthing rib, not automatically, which seems an immaterial matter. In 570,224 the strengthing ribs are produced automatically. The heat generated in the Depew machines was not that stated in patent 572,363, viz., 200°-300° C. That temperature is a manifest error, being about the melting point of lead; the testimony shows that it should have read 200°-300° F., and explains how the error of transcription was probably made. But there was heat generated by the spinning action of the Depew machines, and the heat was sufficient to make the lead, where spun, plastic as the patent requires. There is no appreciable heat in the machine of 570,224.

We concur, therefore, with the District Judge in the conclusion that these machines do not infringe the patent in suit.

Decree affirmed, with costs.