SUNDH ELECTRIC CO. v. CUTLER-HAMMER MFG. CO.

SAME v. GENERAL ELECTRIC CO.

(Circuit Court of Appeals, Second Circuit.   May 25, 1917.)

Nos. 152, 179.

1. PATENTS ⬯328—INFRINGEMENT.
    The Lindquist patents, No. 744,773 and No. 764,608, each for an electro-magnet having a plurality of coils "symmetrically disposed around a central axis, the individual axis of each of said coils being parallel to said central axis," must be construed to refer, and be limited, to physical or geometrical symmetry, and not to a theoretical magnetic symmetry.   As so construed, *held* not infringed.

2. PATENTS ⬯327—SUIT FOR INFRINGEMENT—OPENING INTERLOCUTORY DECREE AFTER APPEAL—CONSENT OF APPELLATE COURT.
    Where an interlocutory decree in an infringement suit has been reviewed on appeal, the further action of the District Court is controlled by the mandate of the appellate court; and while the latter court cannot recall the mandate after the term, it may, on request of the District Court, before entry of final decree, permit that court to open the interlocutory decree and take further testimony.

Appeal from the District Court of the United States for the Southern District of New York.

Appeal from the District Court of the United States for the Northern District of New York.

Suits in equity by the Sundh Electric Company against the Cutler-Hammer Manufacturing Company and against the General Electric Company.   From a decree for defendant in the first case, complainant appeals; and from the decree in the second, both parties appeal.   Decree in the first suit affirmed, and in the second reversed on defendant's appeal.

For opinion below, see 235 Fed. 708.

The first of the causes above entitled is an appeal by plaintiff from the final decree of the District Court for the Southern District of New York, dismissing bill in equity for alleged infringement of patents Nos. 744,773 (claims 1, 2, 3, and 4) and 764,608 (claims 1, 2, and 3), issued to David L. Lindquist.   The second cause is here upon cross-appeals from the District Court for the Northern District of New York.   The action is upon the same claims of the same patents, and was originally brought to restrain an infringement consisting of the manufacture and sale of a device hereinafter called Magnet H.   After trial, interlocutory decree declared infringement (198 Fed. 116), and such decree was affirmed in this court (204 Fed. 277, 122 C. C. A. 475).   Subsequently, and before any final decree, the General Electric Company manufactured and sold seven other devices, hereinafter severally called Magnets A to G, inclusive.   Thereupon plaintiff filed petition for supplementary injunction against such new infringements, which, pending further hearing, was granted (217 Fed. 583).   Testimony was then taken, and much evidence introduced, which would have been material and relevant upon the original hearing.   Upon the completion of this proceeding, the court modified the supplementary injunction (though still holding Magnets A to E, inclusive, to be infringements) by declaring that Magnets F and G did not infringe.   From decree following this opinion (235 Fed. 708), both parties appealed.

The record as finally made in the suit against the General Electric Company does not greatly differ from that in the Cutler-Hammer Company Case, except in such respects as the varying structures of the different defendants render appropriate. The Cutler-Hammer magnet was held not to infringe, assuming validity in the patents; in the General Electric proceeding, validity was necessarily assumed, because of the decision of this court as to Magnet H. After appeal taken, however, the General Electric Company moved here to reopen the case, in order that the District Court might reconsider the whole cause, alleging that the new proofs, first shown upon the hearing for supplementary injunction, swept away the ground of decision as to Magnet H, and rendered unjust adherence to the judgments of this court and the court below in respect of said Magnet H. This application for reopening was heard with the appeals above specified.

Alfred Wilkinson, of New York City (Emerson R. Newell, of New York City, of counsel), for Sundh Electric Co.

W. Clyde Jones and Arthur B. Seibold, both of Chicago, Ill. (Everett N. Curtis, of Boston, Mass., of counsel), for Cutler-Hammer Co.

Frederick P. Fish and Charles Neave, both of New York City, and Albert G. Davis, of Schenectady, N. Y., for General Electric Co.

Before COXE, WARD, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] The claims in suit are printed in 198 Fed. 117, and 235 Fed. 710, and the opinions containing them fully describe the type of apparatus under consideration, its purpose and function. When (in 204 Fed. 277, 122 C. C. A. 475) the General Electric Case was here before, we felt it impossible to deal with the matters in issue, otherwise than to consider the apparent weight of evidence (largely opinion) relating to the very technical application of an abstruse science. Even without reference to the Cutler-Hammer record, it is now plain that the points then deemed obscure and difficult have been greatly elucidated by testimony now for the first time laid before us. Thus Ihlder, the patentee, whose application had been promoted contemporaneously with that of Lindquist and by the same solicitor, did not testify upon the original hearing, and we criticized his absence. 204 Fed. 278, 122 C. C. A. 475. This omission has been more than supplied by the evidence of Lindquist himself.

Again, it was held below (198 Fed. 123) that it would be "practically impossible to make an operative device" from the teachings of the Schuckert German patent, and we substantially accepted this finding upon the evidence as it then existed (204 Fed. 280, 122 C. C. A. 475). It now appears that one of plaintiff's own witnesses constructed a Schuckert magnet and testified concerning his handiwork that it did not chatter with no load, began to chatter at 45 pounds, and was released between 65 and 75.

The patent to Scott (No. 639,447) was in evidence on the first appeal, and was destructively criticized by plaintiff's witnesses and not referred to in any opinion rendered until 235 Fed. 712, where it is erroneously said to have been "fully considered" by both courts. As matter of fact it was viewed as a paper patent, and plaintiff's counsel greatly emphasized the statement (then undoubted) that de-

fendant had neither produced a Scott device, nor shown to the court that it covered a working and workable apparatus. It is now admitted that the so-called Scott-Lamme magnet went into extensive and successful use for years, and we have before us an actual apparatus which has practically demonstrated its value.

Research since the first appeal has also revealed a French patent (No. 322,254) antedating Lindquist and describing a magnet operated or actuated by a two-wire current; and finally it now appears what is the relation in the mind of the patentee himself between his own (so-called) senior and junior patents. Speculation is no longer necessary as to why two applications were filed.

Considering the nature and extent of the foregoing new matter, of which a considerable part appears also in the Cutler-Hammer record, it seems advisable to restate the construction of the patent made upon an incomplete record, as preface to a statement of changes of view produced by new evidence, and to do this before consideration of the motion of General Electric Company to reopen the whole case.

The object of Mr. Lindquist's invention, as plainly stated in his specification, was to hold an armature in position with an alternating current by means of a "substantially constant pull" and (as a result) "without chattering." It being obviously unlawful to attempt to patent per se "a substantially constant pull," the applicant describes his patentable means, which are a "symmetrical" disposition of a "plurality of coils" around a "central axis"; the axis of each coil being "parallel to said central axis." This symmetrical disposition of coils is illustrated by numerous figures, all revealing coils in pairs except one (Fig. 5), which exhibits three coils only. The currents actuating said coils are shown in both two-wire and three-wire systems; in the former case dephasing of current being accomplished by a resistance for which the patentee asserts no invention in himself. Having disclosed these various embodiments of the means of attaining his result, Lindquist sums the matter up by calling attention to the fact that in all his various styles of apparatus "the axes of the coils are always parallel to, and symmetrically disposed around, the axes of the cylindrical magnet core." It is thus seen that what the patentee described as his invention, the things upon which he founded the claims descriptive and definitive of that invention, all consist in a symmetrical arrangement of coils, always parallel to and surrounding the axis of the cylindrical core.

It has always been admitted that this description and the claims in suit accurately fit a core cylindrical in the ordinary geometrical sense and symmetrically (i. e., in a circumference) surrounded by coils also cylindrical and having axes parallel to that of the cylindrical core. But such a reading of the claim (it was said) would confine the patentee to a mechanical arrangement, capable of avoidance by infringers, without departing from a co-ordination of parts capable of producing the same electrical and mechanical results as those sought after and attained by Lindquist, and Magnet H was urged as an effort to accomplish exactly this result. The situation, and the nature of the argument is summarized by the subjoined drawings.

Lindquist 744,773, with 4 Pole Pieces.

Arrangement of Shade Coils on Magnet H—
Top of Plunger.

**Vertical Section of Magnet H.**

Construing the patent favorably, and believing (upon evidence then produced) that the patentee had accomplished a broadly novel result by new and ingenious means, this court affirmed a holding that the symmetrical or cylindrical arrangement covered by the claims and described in the specification, applied to magnetic symmetry rather than to physical or geometrical relation. No such phrase as "magnetic symmetry" is to be found in the patent. It is a creation of expert witnesses, and was adopted by the court as meaning that "the net pull of all the coils must be constant and in one and the same straight line; and this line must be coincident with the axis of symmetry of the core." 198 Fed. 118. The court below also said that any arrangement of a core with coils and pole pieces adjacent, which results in a "substantially uniform distribution of symmetrically balanced magnetic forces," would constitute magnetic symmetry and infringe. 198 Fed. 119. This emphasized the idea of equal forces "balanced" so as to produce a fixed point of application of force. Our view was correctly stated by Hand, J., in the Cutler-Hammer Case by saying that we held:

"That Lindquist was the inventor of a mechanism to hold the armature against the magnet without noise or vibration by means of magnetic forces constantly applied at the point of contact without shifting."

If the symmetrical arrangement prescribed by the claims was made referable to a "straight line [of pull] * * * coincident with the

axis of symmetry of the core," it is plain that by the use of Thomson's shade coils, equidistant from the axis of plunger, Magnet H obtained a fixed point of pull in the plunger axis line; that pull never shifted, but it did fluctuate in value, as does the form of Lindquist's device (Fig. 7) in which a two-phase current is derived, by an interposed resistance, from a single-phase.

These considerations produced the finding that Magnet H infringed. In reaching that success, plaintiff, through its expert, deliberately dropped as an immaterial error the construction shown in Fig. 5 of the patent, because that shows (without explanatory comment in the letter-press) a three-wire system with an arrangement of currents certainly productive of a shifting point of pull, with a constant force of pull. Such a resultant could never be "coincident with the axis of symmetry of the core," or of any reasonable equivalent to a core. To save the patent, this disregard of what seemed not vital at all events was allowed, though not discussed in any of the decisions enumerated. Such practical excision of Fig. 5 is obviously necessary, if the doctrine of "magnetic symmetry" (as recognized in 204 Fed. 277, 122 C. C. A. 475) is maintainable; for the only possible way of calling all the embodiments of invention pictured and described by Lindquist, "symmetrical" is to refer that word solely to the mechanical or geometrical arrangement of poles and coils around a central axis, which is the very thing sought to be avoided by "magnetic symmetry."

Upon reconsideration of the record in the General Electric Case as it stood prior to the petition for supplementary injunction, we are not disposed to depart from the decision then made; but if this were the first appeal, and all the testimony had been adduced on final hearing, we should unhesitatingly hold that Lindquist's invention was accurately described in the claim allowed him by the German Patent Office, which is definitely and unmistakably restricted to mechanical symmetry.

The additional evidence on which our present opinion rests, has been already summarized, except that given by Lindquist himself. From him we learn that Ihlder's magnet (patent No. 791,423) was not only prior in time, but that the problem set Lindquist (apparently by the common employer of both patentees) was to study Ihlder's actual mechanism, and improve it. The improvement consisted in changing the mode of construction, by producing pole pieces and contacts from a cylindrical ribbon roll of metal, a method which minimized or avoided what is called "humming," but treated "chattering" just as Ihlder did, except for such suggestions as those of Figs. 5 and 7.[1]

Upon these appeals we are confronted with the Cutler-Hammer magnet, and Magnets A to G of the General Electric Company, and we shall first consider them without regard to the new proofs above

---

[1] The second patent in suit (764,608) needs no separate mention. While it describes a polygonal, instead of cylindrical, arrangement of parts, the difference is functionally unimportant. The form was adopted solely to cover the ordinary and cheaper laminated construction; and since the patentee clearly contemplated a regular polygon, capable of inscription in a circle, "functional cylindricity" of arrangement was preserved.

adverted to and adduced on the petition for supplementary injunction.[2]

It is plain (and as much is shown by the opinions of the trial courts) that in order to bring the present alleged infringements within condemnation, we must considerably enlarge the definition or meaning of "magnetic symmetry," deemed sufficient (if not final) when the patent was here before; and we are now introduced to other phrases thought to picturesquely describe or characterize Lindquist's apparatus, to wit, "functional cylindricity" and the "business end" of any given magnet.

The conduct of this litigation emphasizes the danger of a sort of exposition or argument by no means uncommon in patent causes. We have said that the phrase "magnetic symmetry" cannot be discovered in the patent; nor can either of the other argumentative expressions above set forth. "Functional cylindricity" appears to mean any physical arrangement of parts even approximately productive of a result most conveniently arrived at through or by means of a cylindrical disposition of the same; while the "business end" of a magnet is "the one which determines whether chattering will occur or not." Phrases such as these, if used or accepted without great reservation, are apt to be treated, not only as convenient descriptions of operation or method, but as being the very patent itself; and it is scarcely figurative to say that plaintiff measures infringement in this case, not by the language of the patent nor even the language of the courts, but by the asserted applicability of phrases invented by experts. Thus we are informed on this hearing that:

"Magnetic symmetry may be defined as such a distribution of the magnetic fluxes in the polar faces which are in contact when the magnet is energized as will provide out-of-step pulls, the resultant of which never disappears and is substantially constant in direction and point of application."

No such definition of magnetic symmetry has ever been admitted by this court; nor (even upon the evidence formerly before us) can it be discovered in the patent. It requires that the resultant of out-of-step pulls of successively acting alternating currents "shall never disappear"; but, if entire disappearance is meant, that was old. It further requires constancy in direction and point of application. This is found in the Lindquist device only by discarding Fig. 5; but the present definition deliberately explodes the theory of the case against Magnet H by introducing the word "substantially," which, when interpreted in the light of the instruments now alleged to infringe, must mean any arrangement of dephased or out-of-step alternating currents which will produce a commercially successful article. Under such an interpretation as this the Lindquist claims would read directly upon substantially all the magnets of prior art referred to in the original record; e. g., Scott's and most of Schuckert's.

Even if the meaning and scope of the claims in suit were measured solely by the former opinion of this court, all the devices now called

[2] The shape, arrangement, and general appearance of these alleged infringements are sufficiently shown in 235 Fed. 711 et seq.

infringements[3] are lacking in what we substantially held to be one test of infringement under the Lindquist patent, to .wit, a central pull; that is, a pull along the line of the axis of mechanism. It was because Scott did not have such central pull that his patent was held no anticipation. The present devices have no central pull, for the same magnetic reason that Scott had none; and to hold (as has been done in the General Electric Case on supplementary petition) that a patent did not anticipate, and yet declare infringement in respect of a device built along the lines of the nonanticipating patent, is clearly erroneous.

But, when all the testimony in both these appeals is considered, the propriety of rejecting the proposed definition of magnetic symmetry is much emphasized, for plaintiff now relies upon the disclosure of Fig. 5 as enough to cover a constant pull with a shifting direction, on Fig. 7 as disclosing a pull of fixed direction, but fluctuating in strength, and on the rest of the specification as covering a pull fluctuating neither in strength nor direction, and fixed at the mechanical center of the apparatus described and diagrammed. It was this last form of magnet of which Schuckert disclosed the theory, Ihlder reduced it to practice, Lindquist improved on Ihlder's construction, and our present opinion is that he did nothing more.

All the disclosures of the specifications can be reconciled or harmonized only upon the theory of physical or geometrical symmetry. This was what Lindquist intended when (ut supra) he pointed out that in all of his described apparatus "the axes of the coils are always parallel to and symmetrically disposed around the axes of the cylindrical magnet core." This statement is consonant with a mechanically cylindrical, circular, or regularly polygonal form of apparatus, and with no other sort; if the claims are referred to this kind of symmetry they are consistent with the specification; construed in any other way they are not.

This conclusion covers the case, except for the motion to reopen the General Electric Case.

[2] This application is made at a time long after the expiration of the term at which our decision in 204 Fed. 277, 122 C. C. A. 475, was rendered. It is therefore now beyond our power to recall the mandate. Reynolds v. Manhattan Trust Co., 109 Fed. 97, 48 C. C. A. 249; Waskey v. Hammer, 179 Fed. 273, 102 C. C. A. 629; Watts v. Unione Austriaca, 239 Fed. 1023, —— C. C. A. ——. Since the lower court has entered no final decree, the case is there pending; but the action of that court is controlled by the mandate issued by us on appeal from interlocutory decree. The lower court can now do nothing but execute the mandate. In re Potts, 166 U. S. 263, 17 Sup. Ct. 520, 41 L. Ed. 994.[4]

It follows that in this court there is nothing to reopen—no pending cause in which the newly discovered evidence could be introduced.

---

3 I. e., the Cutler-Hammer magnet and General Electric Magnets A to G, inclusive.

4 This decision resulted from and disapproved Potts v. Creager (C. C.) 71 Fed. 574, and is inconsistent with the language of Shipman, J. in Re Marquand, 57 Fed. 189, 6 C. C. A. 309. Therefore the latter case can no longer be held authoritative.

There is such a cause in the District Court, and all that prevents application to the discretion of that court for leave to introduce said evidence is our mandate. Where a case was actually pending on appeal in this court, and similar motion was made, we held that the suit would not be remitted to the lower court for such purpose, except upon the request of that court. Ciniotti, etc., Co. v. American, etc., Co., 99 Fed. 1003, 39 C. C. A. 677, following Roemer v. Simon, 91 U. S. 149, 23 L. Ed. 267. Even though no cause is now pending here, we think that substantially similar procedure is permissible and preferable. The District Court cannot open the interlocutory decree affirmed by our mandate; but it can exercise its discretion and form its own judgment as to whether such reopening and taking of additional testimony ought to be permitted, and if and when it requests leave so to do we can grant such request.

This practice attains the same result as that of In re Gamewell Co., 73 Fed. 908, 20 C. C. A. 111, and Wagner v. Meccano, 235 Fed. 890, 149 C. C. A. 202, and is consistent with the reported practice of the Supreme Court. Whether, if the General Electric Case proceed to final decree (without reopening) and an appeal from that decree be taken, the interlocutory decree (although heretofore affirmed) should be regarded as still interlocutory so far as this court is concerned, is a matter upon which no opinion need be now expressed. This application may be now made in the lower court, where in some shape it must always be made; for the motion to reopen is in effect an application for leave to file a supplemental bill in the nature of a bill of review. It is enough for present purposes to enter an order authorizing the District Court to entertain and act upon the application, should defendant prefer the same, notwithstanding the issuance and filing of the mandate hereinbefore referred to.

Contemporaneously with the entry of such order mandates may issue respectively affirming, with costs, the decree of the Southern district, and reversing, with costs, so much of the decree entered in the Northern district upon petition for supplementary injunction as declared Magnets A to E to be infringements. The appeal of the plaintiff, from the decree of the Northern district, will be dismissed, without costs.