### DUNKLEY CO. v. CENTRAL CALIFORNIA CANNERIES CO. et al.

(District Court, N. D. California, Second Division. August 22, 1921.)

No. 201.

Patents ⬯328—1,104,175, for machine for peeling peaches, held valid.

 The Dunkley patent, No. 1.104,175, for a machine for peeling peaches and other fruit, *held* not anticipated and valid, after reconsideration on further evidence.

In Equity. Suit by the Dunkley Company against the Central California Canneries Company and others. On motion to reopen decree. Denied.

See, also, 247 Fed. 790, 159 C. C. A. 648; 261 Fed. 203.

Chappell & Earl, of Kalamazoo, Mich., and W. A. Richardson, of San Francisco, Cal., for plaintiff.

Kemper B. Campbell, Francis J. Heney, Frederick S. Lyon, and William J. Carr, all of Los Angeles, Cal., for defendants.

VAN FLEET, District Judge. The above-entitled cause and the seven similar causes by the same plaintiff, numbered in the margin,[1] all involving the validity of the same letters patent, were heretofore tried together in this court in April, 1916, and on December 4, 1916, in accordance with an oral opinion by the court, an interlocutory

---

[1] Companion cases: Nos. 202, 205, 206, 209, 210, 211, and 212.

decree was entered in each holding the patent valid and infringed and ordering an accounting. These decrees were thereafter in due course in all respects affirmed by the Circuit Court of Appeals (Central California Canneries Co. v. Dunkley, 247 Fed. 790, 159 C. C. A. 648), and its mandate of affirmance filed in this court on May 22, 1918. Thereafter on October 14, 1918, after the coming down of the remittitur, the present motion was interposed by the defendants asking that this court request of the Circuit Court of Appeals the withdrawal of its mandate of affirmance therein and that the causes be thereupon remitted to this court with authority to set aside its decrees and all other proceedings therein, to reopen the same and permit the defendants to reform and amend their pleadings, and thereupon to rehear said causes for the purpose of receiving certain alleged to be newly discovered, additional, and further evidence bearing on the validity of the patent involved and its infringement by the several defendants, and upon such hearing to enter new and different decrees should the evidence warrant.

The grounds of the motion are, in substance, that subsequent to the entry here of said decrees in a suit on the same patent by this plaintiff and its assignee against another alleged infringer (Dunkley Co. et al. v. Pasadena Canning Co., 261 Fed. 203), tried before Judge Trippet in the District Court for the Southern District of this state wherein certain further and additional evidence was produced and heard which it is alleged could not with reasonable diligence be earlier discovered and was for that reason not available on the trial of these causes, the latter court rendered its decree on September 4, 1918, holding the patent void and dismissing the bill, which decree has thus resulted in a conflict of decision as to the validity of the patent and it is said will work confusion and result in hardship to the defendants; and it is claimed that the newly discovered evidence is of a character which would render it probable that on another hearing the patent would be held void by this court. There is a further and distinct ground that at the date of the hearing in this court the plaintiff herein had parted with all its interest in the subject-matter of the suit by assigning its title in the patent pending the hearing to another corporation, and for that reason it is claimed the decrees are void and should be set aside.

The motion was based upon affidavits as to diligence in discovering and the character of the newly discovered evidence largely as disclosed in the record in the cause heard in the Southern district and other evidence and documents to be produced at the hearing of the motion; and falling within the latter category, there was produced and relied on at the presentation the record of the evidence, proceedings, and decree in another and later suit brought by the assignee of the plaintiff, and decided by Judge Hand (A. N.) in the Southern district of New York, subsequent to the filing of this motion but before it was heard, in which the same patent was involved and wherein the decree, based substantively upon the same evidence as that produced before Judge Trippet, was again in favor of the defendant (Dunkley Co. v. Cal. Packing Corporation, 277 Fed. 989).

While, as noted, the motion was entered here in October, 1918, its hearing was at the suggestion of the court postponed until the determination of the appeal then pending in the Circuit Court of Appeals, in the suit heard before Judge Trippet, in anticipation that the decision in the latter might facilitate a solution of the questions involved in the motion—and which, as we shall see, has contributed to that effect. That decision having been rendered (Dunkley Co. v. Pasadena Canning Co. [C. C. A.] 261 Fed. 386), the motion has after some considerable delay been argued and submitted. Since the submission, an appeal in the suit in the New York case has been heard and decided. Dunkley v. California Packing Corporation (C. C. A.) 277 Fed. 996.

Motions of similar import are not without precedent in patent cases, but they are unusual, and the practice not uniform, and this fact doubtless led to some confusion in the minds of defendants' counsel as to where the jurisdiction rested. It appears that defendants first presented a motion to accomplish the same purpose and upon the same showing, to the Circuit Court of Appeals in these cases after its denial of a rehearing but before the remittitur had been sent down; but that court peremptorily denied the defendants' motion, without opinion, and by an order which is wholly silent as to defendants having leave to apply to this court for such relief. This action is now made the basis of an objection by plaintiff that the defendants are precluded from renewing the present motion here and that this court is concluded by the ruling of the Circuit Court of Appeals from granting the relief asked.

I was disposed at the argument to regard the objection rather lightly, but a more mature consideration of the authorities discloses that the question is not free from difficulty. That defendants in applying to this court are now pursuing the more usual and proper course in such instances is, I think, fairly to be gathered from the cases on the subject; and had that course been taken in the first instance, the present objection could not have arisen. Barber v. Otis Motor Sales Co. (D. C.) 245 Fed. 945; Sundh Electric Co. v. Cutler-Hammer Mfg. Co., 244 Fed. 163, 156 C. C. A. 591; Wilson v. Union Tool Co. (C. C. A.) 265 Fed. 669. But this fact does not aid us. The defendants saw fit to first make the application to the Circuit Court of Appeals while the controversy was yet in its hands, and it ruled upon it. That that court had jurisdiction in a proper case to grant the relief no question is or could well be made. In re Potts, 166 U. S. 263, 17 Sup. Ct. 520, 41 L. Ed. 994; Dunn Wire-Cut Lug Brick Co. v. Toronto Fire Clay Co., 259 Fed. 258, 170 C. C. A. 326. In the latter case the Circuit Court of Appeals of the Sixth Circuit, after rendering its decree, granted a similar application authorizing the lower court to reopen the cause without requiring a request from the latter. In the present case the Court of Appeals took cognizance of the motion and ruled on it, and apparently upon its merits—at least, there is nothing to indicate a more limited view—but it denied the relief, not merely without prejudice to an application here, but unconditionally and finally, and we must therefore assume that it so ruled because the application did not appeal to it as having merit. Of course, it is hardly necessary to suggest that where

a question in a cause has been ruled by the higher court it becomes as to the court below the law of the case and the latter may not competently proceed in contravention of it. As stated in Re Potts, supra, where the lower court had taken a course not in pursuance of the mandate of the higher court:

"When the merits of a case have been once decided by this court on appeal, the Circuit Court has no authority, without express leave of this court, to grant a new trial, a rehearing or a review, or to permit new defenses on the merits to be introduced by amendment of the answer. [Citing cases.] In this respect, a motion for a new trial or a petition for a rehearing stands upon the same ground as a bill of review, as to which Mr. Justice Nelson, speaking for this court, in Southard v. Russell, above cited, said: 'Nor will a bill of review lie in the case of newly discovered evidence after the publication, or decree below, where a decision has taken place on an appeal, unless the right is reserved in the decree of the appellate court, or permission be given on an application to that court directly for the purpose. This appears to be the practice of the Court of Chancery and House of Lords, in England; and we think it founded in principles essential to the proper administration of the law, and to a reasonable termination of litigation between the parties in chancery suits.' "

But defendants contend that they are not asking here the same relief they asked of the Court of Appeals; that what they are asking this court to do in no way runs counter to the ruling of the higher court; that what they asked there was for a direct order from that court reopening the decrees, whereas all they ask this court to do is to "request the privilege" of taking that action. The answer of the plaintiff is that this is merely seeking the same relief by going the other way about—"whipping the devil around the stump," as it were—and I am inclined to take that view.

But however the objection should be decided, is, in the view I take of the merits, of little moment in the present case. I say this for the reason that, after a very careful review of the voluminous record, I find myself able to take no more favorable view of this application than that indicated by the Court of Appeals; and there can be no transgression or disparagement of the ruling of the latter court by looking into the record for the purpose of stating my reasons for that conclusion.

The controversy involves the validity of United States letters patent No. 1,104,175, issued to one Sam'l J. Dunkley on July 21, 1914, for a peach-peeling device for use in fruit canning, a full and luminous description of which will be found in the opinion of the Circuit Court of Appeals above noted, upholding the validity of the patent.

The conception at once took rank as of great value in the fruit canning industry, one of great magnitude in this state, and, as is not unusual in such circumstances, it has almost from the date of the application been beset by bitter and stubborn litigation instigated by adverse claimants against both branches of the application; it having been divided in the Patent Office to cover both the device patent here involved and a process patent. The application was filed November 29, 1904, and before the patents thereunder were issued, there had been interposed two interference proceedings and one so-called "public use proceeding," all emanating from the same source which had to run

their course through the Patent Office and the courts of the District of Columbia, before patents were finally secured. Dunkley v. Beekhuis, 39 App. D. C. 494; Monte v. Dunkley, 46 App. D. C. 70; United States ex rel. Dunkley Co. v. Ewing, Comm. Pats., 203 O. G. 603. And since the issuance of this device patent there has been a cloud of infringers, necessitating a large number of infringement suits, the first of which to come to trial being those in this district resulting in the decrees here involved. In view of the history of the litigation in the Patent Office, it was not surprising that when those suits came on for hearing it should be found that both parties were thoroughly prepared, the knowledge gained in the interference and other proceedings having made them entirely familiar with the questions they had to meet and the evidence required; and the cases gave indication of every effort having been put forth by both parties to meet those issues with every item of evidence that could be secured, and indeed that the cases had in all respects been thoroughly prepared, through able counsel, for a determined fight. As a result, the questions involved were very ably presented and no stone left unturned by either side. The whole controversy was made to turn on the same question substantially as that involved in the interference proceedings of anticipation or prior conception, there being no claim of noninfringement and the validity of the patent as involving invention being conceded. As a result of such hearings, these decrees were entered; and, as noted, the decrees were after a full and painstaking consideration of the challenged sufficiency of the evidence fully sustained by the Circuit Court of Appeals in an elaborate opinion meeting every objection urged.

It is obvious that, with this prolonged history of bitter controversy over the fundamental question of priority which underlies these adjudications and where three several tribunals have, after the most mature consideration, successively reached the same conclusion, this court should not, without the most impelling reasons, set these decrees aside and open up the whole controversy anew. As I stated to counsel at the argument, I should not entertain the idea of opening up these decrees unless the showing satisfied me that the interests of justice demanded it in obedience to an unescapable conviction that a rehearing would probably change the result. The showing has fallen far short of disclosing such a situation, but, to the contrary, leaves me quite satisfied with the propriety of those decrees. I have taken pains, with the aid of a very complete index memorandum furnished by counsel, not only to carefully review the evidence introduced before me, but everything additional found in the records in both Dunkley v. Pasadena Canning Co. and Dunkley v. California Packing Corporation, presented for the first time before Judge Trippet in the former case and later to Judge Hand in the latter, and in my consideration of the evidence I have had the benefit of the views and comments found in the opinions of both my learned Brothers, which led them to an opposite conclusion with myself as to the validity of the patent; yet, nevertheless, I am constrained to say that with the highest consideration for the learning and ability of both, I am impressed with neither the character of the

new evidence nor with the conclusions reached in those cases. That there was a cloud of "new" witnesses it is quite true, giving indication that the country had been raked with a "fine-toothed comb," so to speak; but there was little "new" evidence given by them—if the term be used to express the idea of material evidence. In fact, there is none aside from one or two items of so-called documentary proof which does not fall strictly within the characterization of the Supreme Court as being wholly insufficient in character as a basis to set aside or defeat an existing patent. In the very recent case of Symington Co. v. National Malleable Castings Co. et al., 250 U. S. 383, 386, 39 Sup. Ct. 542, 543 (63 L. Ed. 1045), that court took occasion to say:

"This court has pointed out that oral testimony tending to show prior invention as against existing letters patent is, in the absence of models, drawings or kindred evidence, open to grave suspicion; particularly if the testimony be taken after the lapse of years from the time of the alleged invention. Deering v. Winona Harvester Works, 155 U. S. 286, 300."

There is a striking absence of anything in the nature of models, drawings, or memoranda produced to support the mere oral statement of these witnesses made in nearly every instance purely from memory, and this after a lapse of from 15 to 18 years; and as to the items of book entry and correspondence they were not only wholly inconclusive in their character, but made as strongly in support of the plaintiff's theory as to the date the invention was put in practice as that of the defendants'. Indeed, I regard the item referred to as the "Norton letters," to which much significance is attached, as making, in their sequence, when properly construed, entirely in favor of the plaintiff.

And singularly enough while the motion is based entirely on the newly discovered evidence as produced in the hearings before Judge Trippet and Judge Hand, neither of those learned gentlemen seem to have relied on it as the fundamental basis of his conclusion in determining the validity of the patent, but they both resort to evidence that had found a place in the controversy from the beginning.

For instance, Judge Trippet, after noting two or three items of book entry, in themselves of no definitive value, and referring to the Norton letters, contents himself by saying:

"There is other documentary evidence, such as the books of the Clark Engine & Boiler Company, which throw more or less light upon the controversy."

But without specifying anything further he proceeds to discuss the evidence of the witness Stewart L. Campbell, the defendants' chief witness produced before this court on the subject as to when the first device of the Dunkley invention was constructed; and Judge Trippet shows quite clearly that it is largely upon the evidence of this witness that he bases his conclusion that plaintiff's patent had been anticipated. This witness had testified before this court that he himself was the one who conceived the Dunkley invention and constructed the first experimental device in 1903, and that it was not built in 1902 as testified by Dunkley. Of this testimony I had occasion to say in my opinion:

"The main reliance by defendant in the evidence is upon the testimony of the witness Campbell. * * * I indicated at the trial, and my mind has

been only confirmed in that view by my review of the evidence, that I could not extend the limits of my credulity sufficiently to put credence in the testimony of Campbell."

When the cases got to the Circuit Court of Appeals, the appellants disclaimed relying on Campbell's testimony that he was the inventor of the peach-peeling device, but offered it only to negative Dunkley being the inventor. This attitude occasioned the Circuit Court of Appeals to say in its opinion:

"There is in the record the testimony of one Stewart L. Campbell, who was called as a witness by the defendants in surrebuttal, and who testified that he was employed by the Dunkley Company in constructing machinery from the first of 1902 to December, 1904. According to the testimony of this witness he designed and built, in August, 1903, a peach-peeling table, for which the plaintiff obtained the patent in suit, and this he did without any ideas from Dunkley as to its construction. In other words, his testimony is to the effect that he was the designer of the invention for which Dunkley received a patent. But defendants insist that the testimony of this witness was not introduced to prove that fact, and they refer to their answer as showing that it was not so pleaded as a defense. The purpose of this testimony, they say, was to discredit the claim of Dunkley that he was the inventor, and not to offer the defense that Campbell was the inventor. But the testimony of Campbell upon that question was material and relevant to the issue before the court, and was either true or not true. If true, Dunkley was not the inventor of the device claimed as his invention, and that would end the case. If Campbell's testimony was not true, he was testifying falsely concerning a material and relevant matter, and his testimony would for that reason be wholly rejected. 'Falsus in uno, falsus in omnibus.'

"But the defendants say they offer it only to prove that Dunkley was not the inventor. They stand on the priorities set up in their answer as defenses, namely, the priority of the Vernon patent for a process for peeling fruit and the Grier device for an apparatus used in conducting that process. They deny the priority of the Dunkley peach-peeling machine, and offer the testimony of Campbell to prove that fact. This they cannot do. They cannot offer this testimony as true to prove a material and relevant fact for one purpose, and discredit it for another purpose. If it is true for one purpose, it is true for any purpose. And as the defendants have refused to commend the testimony of this witness to the court as true for a purpose to which it was relevant and material, we must reject it for the purpose for which it was offered, namely, to fix the date of the Dunkley constructed machine in 1903, instead of 1902."

Campbell's testimony was not materially different before Judge Trippet, but the latter does not advert to the aspect above discussed by the Circuit Court of Appeals, merely closing his consideration of the witness' evidence by saying: "There is no reason in any event for discrediting Campbell." I have carefully reviewed the particulars of the evidence as to which Judge Trippet seems to think it tends to corroborate Campbell, but I am wholly unable to change my former conclusion as to his evidence.

Basing his conclusion largely on the evidence of this witness, Judge Trippet found the Dunkley patent anticipated and for that reason void. He also found that the device, claimed in that case to be an infringement, did not infringe the Dunkley invention; and it is significant that it was only on this latter ground that the Circuit Court of Appeals affirmed his decree dismissing the bill.

As to Judge Hand's opinion it is devoted largely to a question not

here involved—whether defendants were protected by a license set up in defense—and on the question of anticipation he indulges, with a single exception to be noticed, in little original discussion, contenting himself with following and adopting the views of Judge Trippet. He starts out by saying:

"After hearing the testimony, I was very clear that the complainant had not a valid patent, and that the decision of Judge Trippet was correct."

And referring to Judge Trippet's views on anticipation, he says:

"Judge Trippet has discussed his testimony carefully and has reached the conclusion that Stewart's testimony that he made the first machine in 1903 is correct."

This reference is to Campbell's testimony, the learned judge inadvertently calling him "Stewart"—his first name. He then proceeds to some independent discussion and says:

"In the various alleged anticipating devices *which were exhibited to me* * * * the one which impressed me most was the Baker-Chalker machine. * * * The Baker-Chalker machine was not before Judge Van Fleet, and if it had been, supplemented by the additional testimony that was before Judge Trippet, I believe he would have had no doubt that a valid prior use was established. * * * The identity of function between the Baker-Chalker machine *exhibited to me* and that of Dunkley is convincing evidence that the latter contributed nothing to the art which can be regarded as amounting to invention." (Italics volunteered.)

In these extracts Judge Hand has inadvertently fallen into a singular error or misapprehension arising perhaps from the evidence before him having been largely stipulated into the case from the record before Judge Trippet and not heard orally. In the first place, there was not before Judge Hand one of the Baker-Chalker machines as relied upon by defendants to anticipate plaintiff's device. What was before Judge Hand was a copy of the old original Baker-Chalker orange-washing device, remodeled or adapted from memory by Baker, one of the patentees, to represent that device as the witness testified to seeing it used experimentally in Fresno in 1902 for peeling peaches; and it had been admitted before Judge Trippet solely for illustrative purposes as representing, as nearly as the witness' memory could make it, the device as it was used in Fresno. It found its way before Judge Hand from being stipulated into the record and was only there for the same purposes as used before Judge Trippet. In the next place, all of the evidence as to this device, with a single exception, that was before Judge Trippet, was before me in the present cases, including that of Baker. The exception was the evidence of one Stebler—referred to by Judge Hand as "Stebley"—who saw the device used on one occasion in Fresno in 1902 or 1903 and, testifying purely from memory, said:

"Well I observed that it was a new application of the machine [Baker-Chalker] which I had not seen before, and it was being used as I say in which to remove the peel from peaches preparatory to canning and it was done in conjunction with—by using water in conjunction with the brushes."

It will be observed that the witness says nothing about how the water was being used, and consequently his evidence was entirely valueless

as showing anticipation of plaintiff's patented device, even if otherwise competent. But in fact, under the principles of the Symington Case, neither the evidence of Baker nor that of Stebler was competent to anticipate plaintiff's patent.

Of this Baker-Chalker device I had occasion to say in my oral opinion:

"As to the Vernon device, it had been in use in Fresno as early as 1902 or 1903. I am unable to hold that this device was an anticipation in its essential characteristics. It operated upon a fundamentally different principle. That was an adaptation to the purposes for which the plaintiff's device was used, that of peeling peaches, of a device by Baker and another for scouring oranges for the market; it had a system of revolving brushes, and it used a saturation or douche of water for the purpose of softening the brushes and of washing the fruit; but the essential operative principle there was the brushes. They were for the purpose of scrubbing and washing the hard outer surface of the skin of the orange and of freeing it from mold and other detrimental substances which interfered with its marketability, and the essential principle was the operation of the brushes. The water was used, as I have suggested, only for a saturating and washing purpose. I may say, furthermore, that the patent itself did not call for the essential feature which I find characterizes the plaintiff's device, that is, of peeling jets of water, or water admitted at 'such a high pressure upon the fruit as to act itself as the primary means of washing the skin from the fruit; nor do I think that the manner in which the Vernon patent was used was such as to suggest readily to the mind the idea that peeling jets of water would be efficient for the purpose for which the plaintiff's device was intended. The plaintiff's device operates upon quite a different principle. It has the rotating brushes, but has these peeling jets of water, which are themselves the efficient means of washing off the disintegrated skin of the peach after it has been put through the lye process, and the brushes serve the subsidiary purpose of agitating the fruit and of turning it for the purpose of presenting its different surfaces to the jets of water to enable them to do the efficient work of cleansing the skin after its disintegration by the lye bath; and I am therefore unable to hold that the Vernon device, which was subsequently patented—I think in 1905—can be regarded as an anticipation of the device or the conception embodied in the plaintiff's patent."

I may add that I have found nothing in the record, either new or old, tending in any way to change my views as there expressed.

As a result of his conclusions, Judge Hand found the patent void for anticipation, but he also found that the defendants held a valid license to use plaintiff's device and for that reason was not infringing. It was upon this latter ground alone that the Circuit Court of Appeals of the Second Circuit affirmed his decree, leaving the question of the validity of the patent untouched. As a result their decree, like that of the Circuit Court of Appeals of this circuit, lends no aid to defendants on the present motion.

In what has been said above of the adverse conclusions reached by my Brother Judges I need hardly say that nothing is intended in a spirit of criticism, my sole purpose being to show that the case is not one where I am called upon to accept their conclusions as making in support of the present motion.

In view of the considerations suggested, to grant defendants' motion would, as it seems to me, do violence to a cardinal rule for the guidance of courts, that when parties have had full opportunity to be heard there should be a period to litigation. And in the practical adminis-

tration of the law a party has had full opportunity to be heard when he has been afforded a fair and reasonable opportunity.

As to the last ground of defendants' motion, that the decrees should be vacated for want of proper parties, it is antagonized by a counter motion by plaintiff to add as plaintiff in the several actions the name of the corporation to whom the present plaintiff's rights have been assigned pending the controversy. Leave to apply to this court for that privilege was heretofore granted by the Circuit Court of Appeals and, as the right is one which does not inhere in the merits of the controversy but is purely modal and formal that there may be proper parties to sustain a final decree, the plaintiff's motion should be granted.

Accordingly, the defendants' motion that this court ask leave to reopen the decrees is denied; that of plaintiff to add the new party is granted.