BALTIMORE S. S. CO. et al. v. PHILLIPS.*

(Circuit Court of Appeals, Second Circuit.
November 9, 1925.)

No. 47.

**1. Appeal and error ⬤➡439—Proper procedure to enable District Court to consider motion to vacate dismissal, where writ of error is pending, stated.**

Where District Court desires to consider motion to vacate judgment of dismissal while writ of error is pending, safest way is to ask leave of Circuit Court of Appeals, and, if granted, to proceed, and, if court decides to reopen, it may then request remittitur, and plaintiff will have risked nothing.

**2. Appeal and error ⬤➡776—Appellant may always move to dismiss appeal, and no request is necessary.**

Appellant may always move to dismiss his appeal, and no request for such purpose is necessary.

**3. Appeal and error ⬤➡1074(3)—Any error in requesting remittitur to consider motion to vacate dismissal without specific motion held not available to defendants.**

If it was necessary for plaintiff specifically to move District Court to request remittitur, in order to consider motion to vacate judgment of dismissal, that court made request without motion held not error of which defendants could complain.

**4. Appeal and error ⬤➡719(10)—Action of District Court in requesting remittitur, not assigned as error, will not be reviewed.**

Where action of District Court in requesting remittitur from Circuit Court of Appeals, in order to consider plaintiff's motion to vacate judgment of dismissal without notice to defendants, was not assigned as error, it will not be reviewed.

**5. Seamen ⬤➡29(5)—Evidence of fellow servants' negligence held not admissible, under libel for injury to seaman.**

Where libel for injuries to seaman in failing to provide safe place to work, sufficient appliances, and in failing to use reasonable care to avoid striking him, was amended "by adding the following specifications of negligence," consisting of failure "to provide a proper cleat, in manning the ship with incompetent officers," etc., *held*, that amendment was intended as a videlicet, and evidence of negligence of fellow servants was not admissible.

**6. Judgment ⬤➡713(2)—Judgment bars facts litigated and those which would have supported action.**

Judgment bars subsequent action, not only as to facts actually litigated, but any other relevant facts which would have supported same cause of action.

**7. Admiralty ⬤➡95—Decree on libel for injuries for failing to provide safe place to work and appliances held not bar to action for negligence of ship's officers under Jones Act.**

Decree on libel for injuries to seaman for failing to provide safe place to work and safe appliances *held* not bar to action for injuries caused by negligence of ship's officers under Jones Act (Act June 5, 1920, § 33 [Comp. St. Ann. Supp. 1923, § 8337a]).

**8. Admiralty ⬤➡95—Exclusion of roll in previous admiralty suit held proper.**

Where decrees in admiralty suit did not bar subsequent action for same injuries, roll in admiralty suit was properly excluded in subsequent action.

In Error to the District Court of the United States for the Eastern District of New York.

Action at law by Vernon Phillips, Jr., an infant, by Vernon Phillips, his guardian, against the Baltimore Steamship Company and another. Judgment for plaintiff, and defendants bring error. Affirmed.

See, also, 286 F. 631, and 295 F. 323.

The plaintiff was engaged as seaman upon the steamer West Cape, owned by the defendant United States Shipping Board Emergency Fleet Corporation, and operated by the defendant the Baltimore Steamship Company. While so employed he was injured in the hold of the vessel by the negligent removal of certain dunnage, the details of which it is not necessary to set forth. Some of the strongbacks in the hatchway had not been taken out, one of which the dunnage or whip caught and displaced under the pull of the winch. It fell and injured the plaintiff. The action was brought under section 33 of the Act of June 5, 1920 (Comp. St. Ann. Supp. 1923, § 8337a), commonly known as the Jones Act.

The plaintiff had previously filed a libel in admiralty in the District Court for the District of Maryland against these defendants and the United States of America for the same injuries, claiming indemnity. In the libel the only allegations of fault were as follows: "In failing to provide him with a safe place in which to do the work required of him, and in failing to use reasonable care to avoid striking him, and to the unseaworthiness and insufficiency of the gear and tackle employed on board said vessel." On exception by the respondents for insufficiency of statement, the libelant prayed leave to amend by adding as specifications of negligence the following: "In the failure of the respondent, the United States of America, to provide a cleat or socket of proper design and sufficient strength to support the strongback, when one end of it was negligently knocked out of place by a load of dunnage being hoisted from the hold; further, the officers of the

*Certiorari granted 46 S. Ct. 348, 70 L. Ed. —.

steamship West Cape were incompetent; further, that the respondents owed a special duty to Vernon L. Phillips, Jr., because of his youth and inexperience, and libelant claims that in the event that negligence is not established, for wages, maintenance and cure."

The District Court of Maryland dismissed the libel for indemnity, but awarded the plaintiff $500 for maintenance and cure. In the opinion of the District Judge, it appears that he deemed the case to depend wholly on the charges of fault set up in the amendment just quoted, though he thought the work had been done negligently by the master and crew.

The defendants pleaded in bar the decree on the libel, and the District Court sustained the plea and dismissed the complaint on February 25, 1924. To this judgment the plaintiff took a writ from this court, but while it was pending, and on April 21, 1924, by rule nisi, moved the District Court for a reargument. On May 2, 1924, the District Judge requested this court to remit the record, which it at once did, and thereupon, on May 30, 1924, the District Court vacated the judgment of February 25, 1924, and set down the cause for trial.

The defendants raise three points: First, that the District Court had no jurisdiction to vacate the judgment of dismissal; second, that the decree upon the libel in admiralty was res judicata; and, third, that it was error to exclude as evidence in the trial below the decree, pleadings, and testimony in the admiralty suit.

Ralph C. Greene, U. S. Atty., of Brooklyn, N. Y., and Irving L. Evans, of New York City (Joseph M. Dreyer and Edgar G. Wandless, both of New York City, of counsel), for plaintiffs in error.

Edgar J. Treacy, of New York City, for defendant in error.

Before ROGERS, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). [1] The first point is whether the cause was before the District Court at the time when Judge Inch vacated the order dismissing the complaint and set down the case for trial. The term had not yet expired, because 90 days had not passed since the entry of the judgment, and the rules of the District Court for the Eastern District of New York then in force extended all terms for such purposes for that period. Except for the writ of error, the judgment was therefore still in gremio, and the court might have taken any action in respect of it which seemed to it proper. However, the writ had removed the cause into this court, and, while outstanding, it prevented any action by the District Court without our leave.

The parties and the learned judge plainly proceeded under the authority of Roemer v. Simon, 91 U. S. 149, 23 L. Ed. 267. That was the case of an application to the Supreme Court to remit to the Circuit Court for the admission of new evidence. The decree appealed from was final and the term had expired, for which reason the court denied the motion, as the Circuit Court could have done nothing in the cause after remittitur. But they laid down the proper practice, if the term had been open, which is for the appellant to apply to the lower court to reopen the decree, and for that court to request the upper court to remit.

[2] Of course, the appellant may always move to dismiss his appeal (Greene v. United, etc., Co., 124 F. 961, 60 C. C. A. 93 [C. C. A. 1]), and no request is necessary for that purpose. But in so doing he risks all on his cast in the District Court, for it may be too late after decision for a new appeal. Similarly, if on the appellant's motion the District Court asks for a remittitur before deciding the motion, as was apparently the case in Mossberg v. Nutter, 124 F. 966, 60 C. C. A. 98 (C. C. A. 1), and as the District Court did in the case at bar. The safest way is for the District Court, if disposed to entertain the motion at all, to ask leave of this court to do so. If this is given, it may proceed, the appeal still pending. Should it decide to reopen, it may then request remittitur, and the appellant will have risked nothing. This was the course approved by the Circuit Court of Appeals for the Sixth Circuit in Meccano v. Wagner (C. C. A.) 235 F. 890, and we also approve it. Sundh Elec. Co. v. Cutler-Hammer Mfg. Co., 244 F. 163, 170, 171, 156 C. C. A. 591.

[3, 4] In the case at bar it does not appear that the District Court entertained the motion on the merits at all before asking for the remittitur. The affidavits answering the rule nisi were sworn to on April 28th, and the cause was remitted on request of the court on May 2d. While the District Court should not entertain the motion on the merits without leave, obviously it must read the papers, so far as to learn the nature of the application and whether it will proceed

with it to request either leave of this court, or a remittitur. In requesting a remittitur, perhaps the District Court imperiled the plaintiff's rights to any review, if it remained of the same opinion, but still it got jurisdiction. If it was necessary for the plaintiff specifically to move the District Court to request a remittitur because of this danger to his rights, that was an error of which the defendants may not complain. Assuming it was also error to request the remittitur without notice to the defendants, which might have an interest in maintaining the pendency of the writ, that is not assigned here, and we see no reason to take it up nostra sponte. The writ was automatically dismissed on the remittitur, the District Court got jurisdiction, and the point is not well taken.

[5] On the question of res judicata the pleadings show that the issue of the negligence of the ship's officers was not presented in the admiralty suit. It is true that the libel in article third alleged that the respondents had been guilty of negligence, not only in failing to provide Phillips with a safe place to work and in furnishing unseaworthy and insufficient gear, but also "in failing to use reasonable care to avoid striking him." The last clause, standing alone, might have admitted evidence of the negligence of his fellow servants in handling seaworthy gear, but it did not so stand. The respondents excepted to the libel because the allegations of negligence were "too general, vague and indefinite," and asked that the libelant should allege "specific and definite acts of alleged negligence." The exceptions apparently never came on for hearing, but instead the libelant prayed leave to amend "by adding the following specifications of negligence to the third paragraph (sic) of the libel." Then follows the proposed amendment: "Libelant alleges the negligence claimed consists" in the failure of the respondent, United States of America, "to provide a proper cleat, in manning the ship with incompetent officers, and in failing in special care of the libelant because of his youth."

We think that this amendment, being in answer to an exception for informality in the statement of the cause of suit, was plainly intended as a videlicet to the general allegations of article 3. True, the prayer was to amend by "adding the following specifications of negligence," but the amendment is to be read in the light of its purpose and that was to stand upon the specific faults

therein alleged. If so, there was no allegation of negligence in handling the winch, and the libel would not have admitted the evidence on which recovery was had in the case at bar. That this was in fact the view taken by all sides is apparent from the opinion of Judge Rose dismissing the libel.

[6] However, while it is true, for the reasons just given, that the libelant could not have recovered under his libel as amended, it by no means follows that the decree is not a bar to this action. An earlier judgment is a bar, not only when the facts actually litigated are the same; but also as to any other relevant facts which would have supported the same cause of action. U. S. v. California, etc., Co., 192 U. S. 355, 24 S. Ct. 266, 48 L. Ed. 476. The rule is too well settled to require abundant citation, but much difficulty arises over the meaning of the phrase "cause of action."

[7] In the case of a suit for personal injuries, it is indeed possible to regard the action as based alone upon the plaintiff's bodily injury. So viewed, a battery would be the same cause of action as an action on the case for unintentional injury. The question would be irrelevant, whether the injury, in fact caused by the defendant, was intentional or careless. The material fact would be, the injury itself and its causation by the defendant. History alone forbids such a view, though eventually the law may assume that form. 8 Harv. Law Review, 1.

Nevertheless, among actions on the case it would still be possible to adopt the theory, somewhat mutilated, to be sure, but consistent so far as it went. Confined to acts which were unintentional, the law might regard the injury and its causation as alone constituting the cause of action, treating as a variant, immaterial in the definition of the species, the kind of neglect which cut off the defendant's excuse that the injury was not intended. So viewed, it would be the same cause of action, whether the defendant had installed unseaworthy gear or had been careless in the use of seaworthy gear.

But a defendant's liability in such cases might depend upon a quite opposite notion; that is, that he owed a duty of care in the use of such gear as he installed, and another duty to install seaworthy gear. In that view the cause of action would differ according as the plaintiff charged him with one or the other default, and a judgment on the one would not be a bar to the other. We concede that the law has not come to a

definite conclusion between the two theories, and cases may be found taking either view; but obviously we are to be controlled by that taken by the Supreme Court, so far as it has declared itself.

The nearest case is Troxell v. D., L. & W. R. R. Co., 227 U. S. 434, 33 S. Ct. 274, 57 L. Ed. 586, which, we think, favors the plaintiff. Troxell's widow had sued the defendant, alleging that it had failed to provide proper safety appliances under the Pennsylvania statute. She lost, and brought a second action, based on the federal Employers' Liability Act (Comp. St. §§ 8657–8665), for the negligence of the defendant's servants in handling its cars. The first judgment was held not to be a bar. The case may, it is true, be distinguished on the ground taken by Mr. Justice Lurton, that the parties were not the same, because in the second suit the widow sued as administratrix. Yet the decision goes much further, because the court clearly held that it was one cause of action not to furnish safe cars, and another to use safe cars carelessly.

It is not perfectly certain that, had the plaintiff in the first action relied upon the Employers' Liability Act, as she might (because that includes defective appliances), the result would have been the same. That is, indeed, the case at bar, since the Jones Act incorporates the Employers' Liability Act. But, if we ignore the difficulty arising from the distinction in the plaintiff's persona, it appears to us that there could be no logical differences. If the "cause of action," as the defendants at bar must maintain, consists of the injury, and its origin from the defendant in one way or another, it cannot be a distinction that in Troxell's Case the defendant's faults were defined in two statutes, while in the case at bar they are to be found in one. The crux of the question rests, not in the sources of the faults, but whether the law regards them as constitutive, or only regulative of the basis of recovery. No doubt that in the end is a conventional question, but then so is most of the law. Perhaps it would be practically better to insist that a person injured by another should bring forward at one time all the reasons why he should recover. Yet there is a clear difference between injuring an employee because of inattention in the conduct of one's work and because of failing to furnish proper tools. The difference appears to us, at least, as substantial as between injuring him intentionally and unintentionally. It does not follow, because such diverse situations may be divided, that a plaintiff may sever by separate suits different acts of negligence in the conduct of the work. It is enough for the present that the Supreme Court has countenanced the severance here necessary.

[8] The exclusion of the roll in the admiralty suit was proper, after what we have said. No fact actually adjudicated in the suit was material to the disposition of the action. As an estoppel, it was irrelevant; as a bar, it was bad.

Judgment affirmed.